# IN THE COURT OF APPEALS OF IOWA

No. 15-2043
Filed February 10, 2016

IN THE INTEREST OF V.C. and J.C.,
Minor Children,

C.C., Mother,
Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights to her children, V.C. and J.C. **AFFIRMED.**

Vanessa E. Strazdas of Strazdas Law, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Roberta Megel of the State Public Defender, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

A mother appeals the juvenile court's termination of her parental rights to her children, V.C. and J.C. She argues the State failed to prove the grounds for termination by clear and convincing evidence. We conclude clear and convincing evidence supported termination, and therefore affirm.

## I. Background Facts and Proceedings

Two children are at interest in this appeal. V.C. is an eight-year-old boy. J.C. is a ten-year-old boy. Both are the children of the mother and the same father.[1]

V.C. and J.C. first came to the attention of the Iowa Department of Human Services (DHS) on August 28, 2014, after they failed to appear at school because the father was not home to take them. DHS received a referral alleging the father was unable to maintain a safe and suitable home for his sons. Police officers went to the father's home and found it to be filthy and unsuitable for the children. Water and electric utilities had been disconnected two days prior for lack of payment. As a result, the toilet was full of feces and urine. There was no food in the home. The boys were sleeping on dirty mattresses on the floor. In the father's absence, the boys had been left in the care of the father's frail and wheelchair-bound great-grandmother, who was unable to provide proper care. V.C. and J.C. were taken into protective custody that day, and have not been in the care of either parent since.

---

[1] The father's parental rights were also terminated as to both children, but he has not appealed.

The father had officially begun caring for V.C. and J.C. in 2009, apparently as a result of an Iowa court order. According to the mother, however, the boys continued to live with her in Nebraska for three years—from 2009 until November 2012—while the father was not around. She testified the father only took the boys from her after the Nebraska authorities told him she had been abusing them. The mother did not see her children again for nearly two years while they lived with the father and until DHS took them into protective custody.

During an interview with a DHS child protective worker, the boys stated their mother came and went from their lives. They reported the mother drank and used drugs. They also reported their belief that she was currently homeless and living out of her car in Nebraska. According to the boys, the mother had another child, who was in foster care in Nebraska. A DHS social work case manager contacted the mother and asked why she had not seen her sons in two years. The mother said she felt the father had been taking good care of them.

V.C. and J.C. were each adjudicated to be a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(c)(2) and (g) (2013) following an adjudication hearing on October 13, 2014. The juvenile court ordered that DHS retain care, custody, and control of the children, and provide for services to be made available for the children and parents. With respect to the mother, the court ordered her to have future contact with her sons through DHS, to maintain suitable housing and verifiable income, and to have a home study completed on her home in Nebraska through the Interstate Compact on Placement of Children (ICPC). *See* Iowa Code §§ 232.158–.168.

The permanency goal for V.C. and J.C. from the outset had been reunification with either the mother or the father, or both. And initially, reunification efforts seemed to be progressing, based upon the mother's satisfactory and mostly-consistent participation in offered services and interactions with V.C. and J.C. The juvenile court's order following a November 3, 2014 CINA disposition hearing noted the mother had "been receptive to following through with interactions supervised by the family's provider as well as interactions offered by the [boys'] foster parents." Likewise, the order following a February 2, 2015 CINA review hearing noted positive progress in that "supervision between [the mother] and her boys has decreased," and referenced the DHS caseworker's interest in seeing the mother have consistent interactions with her sons when given more time and a less structured setting. The juvenile court specifically stated in its February 2 review order, "This [reunification] plan is expected to be achieved on or before the permanency hearing," and set the permanency hearing for July 9, 2015.

In the interim, however, a home study was completed on the mother's Nebraska home. The mother has lived in the same Nebraska city throughout the events underlying this appeal. She reportedly has been renting and residing in the same home since October 2013. At the outset of these proceedings, she lived there with her youngest son, four other adults, and two other children, although she stated most of those individuals would move out if a home study were to be completed. The mother asked DHS to delay requesting the home study because she felt unprepared, but reported that she was ready in January 2015.

The home study was completed by the Nebraska Department of Health and Human Services in April 2015. Among the concerns highlighted in the home study were the mother's "functional and cognitive impairments" that affected her ability to parent effectively, her dependence upon family and friends to parent her youngest son, her odd behavior during visits, financial issues, and her ongoing relationship with a man whose criminal background revealed both a history of physical child abuse and an outstanding arrest warrant. The home study concluded with the following assessment: "At this time it does not appear that [the mother] ha[s] the cognitive ability to parent [J.C.] and [V.C.]. Therefore, Nebraska Health and Human Services is denying the placement of [the children] with [the mother]."

The denial of the mother's home study coincided with a more general decline in her reunification efforts. The juvenile court's order following the permanency hearing on July 9, 2015, noted the mother had only "attended eighteen out of the thirty-three offered interactions with her sons" since the last hearing in February, despite the fact that transportation was provided for the boys. In addition to the drop in the mother's interactions with her sons, she was inconsistent in her attendance at various other appointments and events that had been recommended to her. The court also noted the mother was not receptive either to taking a parenting class or to moving to Iowa in order to further the reunification efforts, despite the fact she had been told "placement of the children at her current residence would be impossible due to the denial of the ICPC home study."

The juvenile court ultimately ordered on July 9, 2015, "That the permanency goal of reunification be changed to termination of the parent-child relationship and adoption." The court further explained:

> The permanency goal had previously been reunification, and it was expected to be completed at this time. Reunification has not occurred. Neither parent has demonstrated behavior changes indicating they can appropriately care for the boys. Further reunification is definitely impeded by the denied home study and [the mother's] unwillingness to relocate to Iowa to continue with reunification efforts. It is clear these boys need permanency. This court finds the change in permanency goal to termination of parental rights is appropriate and hereby adopts the same.

A termination hearing was held on November 2, 2015. The State offered the testimony of the DHS social work case manager assigned to V.C. and J.C. The case manager recommended the mother's parental rights be terminated, citing her "noncompliance and the children's inability to be returned to her care at this time." The mother was present and testified on her own behalf. The juvenile court terminated the parental rights of both the mother and father to their children pursuant to Iowa Code sections 232.116(1)(e), (f), and (i) (2015).

The mother now appeals.

## II. Standard of Review

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly

regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

## III. Analysis

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

As noted above, the juvenile court terminated the mother's parental rights on three different grounds, as set forth in sections 232.116(1)(e), (f), and (i). The mother challenges the sufficiency of the evidence to support the juvenile court's "clear and convincing" findings on all three grounds. When a juvenile court terminates parental rights on more than one ground, as it has in this case, we may affirm the order on any of the statutory grounds supported by the record. *D.W.*, 791 N.W.2d at 707.

Section 232.116(1)(f) provides that a juvenile court may terminate parental rights to a child if "the court finds that all of the following have occurred":

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges only the final requirement for termination under section 232.116(1)(f)—a finding by clear and convincing evidence that V.C. and J.C. could not be returned to her custody at the time of the termination hearing. The mother argues the children were removed from the father's custody—not hers—for unsafe living conditions, and the State presented no evidence her sons would actually be unsafe in her custody, despite the denial of her home study. She points out a series of negative drugs screens and ongoing care of an even younger child as evidence of her suitability as a caregiver. She also claims she "substantially complied with DHS recommendations."

Upon our de novo review, we find the State proved by clear and convincing evidence that V.C. and J.C. could not be returned to the mother's custody at the time of the November 2, 2015 termination hearing. Because the Nebraska Department of Health and Human Services denied her home study in April 2015, the children cannot be placed in her care in Nebraska. *See* Iowa Code § 232.158(3)(d); *see, e.g., In re C.L.P.*, No. 12-0409, 2012 WL 1454007, at *3 (Iowa Ct. App. April 25, 2012) ("Alabama denied the mother's home study twice. Thus, the children cannot be placed in her care in Alabama."). Moreover, the mother's claim that the State presented no evidence her sons would be unsafe in her custody is belied by both the testimony and report of the DHS social work case manager, who mentioned the State of Nebraska was currently

investigating drug use and possible drug distribution occurring in the mother's Nebraska home. Accordingly, termination was appropriate under section 232.116(1)(f).

We further find termination is in the best interests of the children, and no statutory factors serve to preclude termination. The mother has been absent for large portions of her sons' lives, and has not consistently shown that she is willing or able to maintain a safe and nurturing environment for them. Even after her home study was denied and it was made clear to her V.C. and J.C. could not be placed with her at her home in Nebraska, she chose to remain there. We agree with the juvenile court that V.C. and J.C. deserve permanency, and in this case termination of the mother's parental rights is in their long-term best interests.

**AFFIRMED.**